UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM CHERRY, | : |
| Plaintiff, | : |
| vs. | :    No. 3:13cv1440(WIG) |
| CAROLYN COLVIN,<br>Acting Commissioner of<br>Social Security, | :<br><br>: |
| Defendant. | : |

-------------------------------------------------------X

**RECOMMENDED RULING ON PENDING MOTIONS**

Plaintiff William Cherry has filed this appeal of the adverse decision of the Commissioner of Social Security denying his applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff now moves, pursuant to 42 U.S.C. § 405(g), for an order reversing this decision or, in the alternative, for an order remanding the case for a rehearing. [Doc. # 18]. Defendant has responded with a motion to affirm the decision of the Commissioner. [Doc. # 20]. For the reasons set forth below, the Court recommends that the decision of the Commissioner should be affirmed.

**Procedural History**

Plaintiff filed an application for a period of disability and disability insurance benefits, alleging an onset date of November 19, 2009. His claim was denied initially and upon reconsideration. Plaintiff subsequently filed a request for a hearing; a hearing was held before Administrative Law Judge Ronald J. Thomas (the "ALJ") on February 13, 2012. The ALJ issued a decision on February 22, 2012 concluding that Plaintiff has not been disabled from November 19, 2009 through the date of the ALJ's decision. Plaintiff filed a request for review of the ALJ's

1

decision; the Appeals Council denied review, making the ALJ's decision final for appeals purposes. This appeal ensued.

## Factual Background

Plaintiff was 49 year old at the time of the hearing before the ALJ. (R. 29). He completed high school, and after high school obtained a certificate in Supervising Management. (R. 31). Plaintiff most recently worked as a truck driver, and stopped working in 2009. (R. 32). Plaintiff filed a workers compensation claim for a back injury he experienced while at that position; the claim settled for $16,000. (R. 33). Plaintiff also has past work experience as a merchandise selector, as an assembler in a machine shop, and as an assembler at a hardware company. (R. 33-34).

## Medical History

Plaintiff has a lower back impairment. He obtained a back injury while working at Whole Foods on December 2, 2007. (R. 204). The injury occurred as a result of Plaintiff repetitively lifting forty pound boxes. (*Id.*). On December 7, 2007, Plaintiff went to the hospital for acute back pain and lumbar strain. (R. 228). He was instructed not to lift weight greater than five pounds, not to engage in strenuous activity, and to return to work after evaluation. (*Id.*). On December 18, 2007, Dr. Acampora cleared Plaintiff to return to work with the following restrictions: no repetitive lifting over ten pounds; no bending greater than five times per hour; no pushing/pulling over twenty pounds of force; and no squatting or kneeling. (R. 248).

In a letter dated July 14, 2008, Dr. Brown reported that Plaintiff presented with complaints of some intermittent back and left leg pain. (R. 205). He observed that Plaintiff appeared in no acute discomfort, and that there was no significant loss of motion. (*Id.*). Dr. Brown assessed possible intermittent left lumbar nerve root impingement, lumbar strain

syndrome. (R. 206). He recommended an MRI be taken to rule out any disc herniation. (*Id.*). If the MRI was negative, Plaintiff could resume full duty work. (*Id.*). Dr. Brown added that Plaintiff could currently work on a light duty basis. (*Id.*).

An MRI of Plaintiff's lumbosacral spine on taken on September 15, 2008 was unremarkable. (R. 202). There was no disc herniation, and no evidence of central or neural foraminal narrowing. (*Id.*).

On May 21, 2009, Plaintiff saw Dr. Katz complaining of difficulty bending and lifting due to his back injury. (R. 233). Plaintiff reported not being able to work since his December 2, 2007 injury. (*Id.*). Dr. Katz noted that the lumbosacral spine revealed diffuse muscle spasm and tenderness in the lower lumbosacral region, particularly on the left side. (*Id.*). He recommended Plaintiff try manipulative treatment, home exercise, and use of a muscle relaxant. (*Id.*).

Plaintiff saw Dr. Krompinger on November 19, 2009. Dr. Krompinger remarked that, based on clinical assessment and the MRI results, Plaintiff sustained a subtle injury to the lower lumbar spine in the form of internal disc derangement. (R. 211). He added that, for the most part the MRI was normal, which was "quite remarkable given this gentlemen's age." (*Id.*). Dr. Krompinger opined that Plaintiff had reached maximum medical improvement and assigned a seven percent permanency to the lumbar spine. (*Id.*). Dr. Krompinger noted he did not anticipate the need for a great deal of medical intervention going forward. (*Id.*). He opined that Plaintiff should seek a job that does not involve repetitive bending or lifting over thirty lbs. (*Id.*).

Plaintiff also has a right knee impairment, including a history of multiple surgeries to his right knee. (R. 267). On April 27, 2010, Plaintiff saw Dr. Tomack at the Hospital of Saint Raphael ("St. Raphael") complaining of a right knee abscess. (R. 261). Dr. Tomak noted that Plaintiff had had a right patellar tendon repair for rupture about fifteen years earlier. (*Id.*).

Plaintiff reported he was recently unable to do straight leg raises and the abscess has been draining on and off for the last few weeks. (*Id.*). Dr. Tomak assessed a small abscess and a subacute patellar tendon rupture. (*Id.*). Plaintiff was treated and instructed to return after the superficial infection had resolved in order to discuss options for treating the rupture. (*Id.*).

On May 20, 2010, Dr. Gibson of St. Raphael observed that over the past year Plaintiff had experienced failure of tendon reconstruction and subsequent wound breakdown over the anterior portion of his tibial tuberosity. (R. 257). Dr. Gibson performed a procedure consisting of incision and drainage and removal of retained FiberWare from the infected knee. (*Id.*). On June 15, 2010, the incision was completely healed. (R. 266).

Plaintiff returned to St. Raphael on July 27, 2010 after developing a cyst believed to be caused by a suture in the wound bed. (R. 212). Dr. Gibson removed the cyst and reported that the procedure went well. (*Id.*). The ruptured patellar tendon would be repaired after Plaintiff was healed from the cyst surgery. (*Id.*).

On October 20, 2010, Dr. Gibson performed surgery to reconstruct Plaintiff's patella tendon. (R. 224). In a follow up visit on November 9, 2010, Dr. Reznick noted that Plaintiff was doing well, was able to walk, and had his knee extended in a knee immobilizer. (R. 276). Plaintiff reported that he was ambulating well. (*Id.*). In another follow up visit on December 7, 2010 it was noted that Plaintiff doing relatively well, and he was given a prescription for physical therapy. (R. 274). It was recommended that Plaintiff use a cane for going up and down stairs, but that he should stop using assistive devices as soon as possible. (R. 274).

On February 11, 2011, Dr. Ruwe reported that Plaintiff was pleased with his post-surgical progress. (R. 271). Dr. Ruwe observed the incisions to be well-healed, and an active range of motion from zero to sixty-five degrees. (*Id.*). He further noted that Plaintiff has done very well

since the surgery, despite limited follow-up. (*Id.*). All activity restrictions were removed, and Plaintiff was given a prescription for physical therapy to gradually resume full range of motion and strengthening exercises. (*Id.*). Plaintiff was instructed to return in two to three months if he did not have full range of motion by that time. (*Id.*). On April 15, 2011, Dr. Yau of St. Raphael wrote a note indicating that Plaintiff may not perform deep knee bends or squats.[1] (R. 308).

### Agency Documents

Plaintiff completed an Activities of Daily Living Questionnaire ("ADL") on September 27, 2010, and reported as follows: his injuries affect his ability to take care of personal grooming because he has difficulty bending and reaching, and can sit and stand for only limited periods of time. (R. 157). Plaintiff also has difficulties doing house and yard work because of these limitations. (R. 159). He does not go out alone because muscle spasms cause his legs to give out and result in a fall. (*Id.*). Plaintiff does go to church on Sundays. (R. 161). He can lift 10-20 pounds, and cannot walk more than 20 steps before experiencing back spasms. (*Id.*). Plaintiff uses a cane prescribed by Dr. Gibson when he has real difficulties walking. (R. 162).

Another ADL was completed by Plaintiff on February 10, 2011. He reported as follows: Sitting and standing are very uncomfortable for him, and he cannot reach or bend. (R. 176). He attends church once a month. (R. 179). He uses a walker, cane, and brace/splint, prescribed by Dr. Gibson, to walk when the weather interferes with mobility. (R. 182). Plaintiff takes medication for constant pain, and rates his pain as eight, sometimes ten, on scale of one-to-ten with ten being the worst. (R. 183). Taking medication eases his pain, but his mobility remains limited. (*Id.*).

---

[1] There is no context for this note. It is not accompanied by any treatment records or specific details to support these limitations.

Plaintiff also completed a Symptom Questionnaire on February 10, 2011. He reported that his symptoms in his lower lumbar spine and repaired patellar tendon cause him to be in constant pain, to be unable to sit or lay down for long periods of time, and to have constant muscle spasms. (R. 184). These symptoms are triggered by movement or weather. (*Id.*).

Dr. Ryan conducted an Internal Medicine Consultative Exam on October 8, 2010, He noted that Plaintiff reported that his back and knee conditions interfere with his ability to work, that his back pain is continuous, and that the pain in his right knee ranges from ache to sharp. (R. 215-216). Dr. Ryan observed that Plaintiff was not currently getting any treatment at the time. (R. 216). He reported that Plaintiff walks with a limp and uses a cane for support. (R. 218). Upon examination, Dr. Ryan observed that forward bending of the lumbosacral spine was limited to forty degrees, normal being ninety, and that squatting was limited to ten degrees, normal being ninety. (R. 218-219). Plaintiff had normal range of motion in his knees. (R. 219). Plaintiff could not heel walk and had leg weakness with resistance to flexion and extension on left leg, and pain with flexion and extension on the right knee. (*Id.*). Dr. Ryan concluded that Plaintiff is capable of sitting, and standing is problematic because Plaintiff says he can only stand for fifteen minutes. (R. 220). Dr. Ryan opined that Plaintiff is capable of walking, but that Plaintiff states he can only walk about twenty yards before his back and leg bother him. (*Id.*). Dr. Ryan opined that carrying objects would be problematic as Plaintiff cannot support himself without the cane. (*Id.*). Finally, he opined that Plaintiff can walk without severe pain. (*Id.*).

### Proceedings before the ALJ

ALJ noted Plaintiff was without counsel and offered to postpone the hearing to enable Plaintiff to find an attorney or representative. (R. 28-29). Plaintiff elected to proceed without an attorney, stating he had one who "assist[ed] me and what I had to do." (R. 29).

At the hearing Plaintiff testified that he had three screws in his knee, his knees are weak, and that he fell twice and bent the screws. (R. 36). Plaintiff also stated that he has back pain all the time, and that surgery will not help. (R. 36-37). He takes 800 mg ibuprofen for his back pain, and does not take any medication for his knee impairment. (R. 37). Plaintiff testified that he cannot lift weight because of his knee. (*Id.*). He added that he could not bend or squat. (*Id.*). Plaintiff further testified that he lived on the second floor and experiences shortness of breath when he goes up and down the stairs. (R. 38). Plaintiff testified that he no longer drives a car because of his back pain. (R. 39). He reported that he does not run errands or partake in social activities because his injuries prevent him from standing or walking for a long period of time. (R. 39-40).

## The ALJ's Decision

The ALJ applied the established five-step, sequential evaluation test for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). Step one determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010). Here, the ALJ determined that Plaintiff did not engage in substantial gainful activity since the alleged onset date. (R. 14).

At step two, the ALJ evaluates whether the claimant has a medically severe impairment or combination of impairments. In this case, the ALJ determined that Plaintiff has the following severe impairments: musculoligamentous strain of the lumbosacral spine, and chronic failure of the right patellar tendon. (R. 14).

At the third step, the ALJ evaluates the claimant's impairments against the list of those impairments that the Social Security Administration acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Part 404, Subpart

P, App. 1 (2010) ("the Listings"). If the impairments meet or medically equal one of the Listings, the claimant is conclusively presumed to be disabled. In this case, the ALJ considered Plaintiff's impairments, alone and in combination, and concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. (R. 14-15).

At step four, the ALJ must first assess the claimant's residual functional capacity ("RFC") and then determine whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Here, after considering the record as a whole, the ALJ found that Plaintiff has the RFC to perform light work except that he can occasionally bend, stoop, twist, squat, kneel, crawl, climb, and balance, and can never operate right foot controls. (R. 15). The ALJ then determined that Plaintiff was unable to perform his past relevant work. (R. 19).

Finally, at step five, the ALJ must determine, considering the claimant's age, education, work experience, and RFC, whether there are jobs existing in significant numbers in the national economy claimant can perform. 20 C.F.R. §§ 404.1569, 416.969. In this case, the ALJ used the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, App. 2, to conclude that Plaintiff could perform unskilled light work. (R. 19-20). As such, the ALJ determined that Plaintiff was not under a disability through the date of the decision. (R. 20).

## Standard of Review

Under 42 U.S.C. § 405(g), the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Judicial review of the Commissioner's decision is limited. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). It is not the Court's function to determine de novo whether the claimant was disabled. *See Schaal v.*

*Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Rather, the Court must review the record to determine first whether the correct legal standard was applied and then whether the record contains substantial evidence to support the decision of the Commissioner.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive..."); *see Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998).

When determining whether the Commissioner's decision is supported by substantial evidence, the Court must consider the entire record, examining the evidence from both sides. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  Substantial evidence need not compel the Commissioner's decision; rather substantial evidence need only be that evidence that "a reasonable mind might accept as adequate to support [the] conclusion" being challenged.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) (internal quotation marks and citations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks and citation omitted).

## Discussion

Plaintiff makes the following arguments in support of reversal and remand of the ALJ's decision:

1) The ALJ failed to develop the administrative record.

2) The ALJ's credibility determination was not supported by substantial evidence.

3) The ALJ's RFC finding was not supported by substantial evidence.

A. Development of the Administrative Record

Plaintiff contends that the ALJ failed to fulfill his duty to develop the record for Plaintiff who was unrepresented at the hearing. Specifically, Plaintiff asserts that the most recent medical report in the record is dated February 11, 2011, and that the ALJ failed to seek out medical records for the following year.

The ALJ has a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citing *Lamay v. Comm'r of Soc. Sec.,* 562 F.3d 503, 508–09 (2d Cir.2009)). In fulfilling this duty, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Id.* at 113 (citing *Butts v. Barnhart,* 388 F.3d 377, 386 (2d Cir.2004)). When, as here, a claimant "properly waives his right to counsel and proceeds *pro se,* the ALJ's duties are heightened." *Id.* (internal quotations marks omitted).

In this case, the ALJ was aware that Plaintiff was proceeding without counsel. At the start of the hearing, he offered to provide Plaintiff with a list of legal assistance lawyers who could assist him and explained that these lawyers would not charge a fee unless the case is successful. (R. 28). The ALJ also offered to postpone the hearing to enable Plaintiff to find an attorney. (R. 29). Plaintiff responded that he would like to proceed unrepresented, and added that he did have a lawyer who assisted him in "what [he] had to do." (*Id.*). At the end of the hearing, the ALJ asked if there was anything else that needed to be discussed, and confirmed that he had all the exhibits Plaintiff had provided. (R. 41). The ALJ took sufficient efforts to advise Plaintiff of his right to have counsel at the hearing, and adequately assisted Plaintiff in developing his case.

Additionally, Plaintiff has failed to show how he was prejudiced by any failure to develop the record further. To demonstrate prejudice, Plaintiff must show that additional medical records would have undermined the ALJ's decision. *Lena v. Astrue*, No. 3:10cv893(SRU), 2012 WL 171305 at *9 (D. Conn. Jan 20, 2012). Here, notably, Plaintiff does not actually argue that there *is* additional evidence that the ALJ did not consider; in other words, Plaintiff does not actually contend that additional evidence even exists. Rather, Plaintiff's argument is premised on the ALJ's alleged failure to ask for additional, albeit nonexistent, records. This cannot be a basis for demonstrating prejudice. "Absent any showing of prejudice, the ALJ did not fail to meet his burden of developing the record and did not rely on incompetent evidence in deciding this case." *Id.* Accordingly, the Court finds no violation of the ALJ's duty to develop the record.

### B. Plaintiff's Credibility

Plaintiff next challenges the ALJ's credibility determination, arguing that the ALJ's finding that he was not completely credible was unsupported. There is a two-step process for credibility determinations. First, the ALJ must determine whether the record demonstrates that the claimant possesses a medically determinable impairment that could reasonably produce the alleged symptoms. 20 C.F.R. §§ 404.1529(a), 416.929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

Second, the ALJ must assess the credibility of the claimant's subjective complaints regarding the intensity of the symptoms. The ALJ must initially determine if objective evidence alone supports the claimant's complaints; then, if the evidence does not support the claims, the ALJ must consider other factors laid out in 20 C.F.R. §§ 404.1529(c); 416.929(c). *See, e.g., Skillman v. Astrue*, No. 08-CV-6481, 2010 WL 2541279, at *6 (W.D.N.Y. June 18, 2010). These factors include activities of daily living, medications and the claimant's response thereto, treatment other than medication and its efficacy, and other relevant factors concerning limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ must consider all of the evidence in the case record. SSR 96-7p, 1996 WL 374186, at *5. Furthermore, the credibility finding "must contain specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at *4.

In working through the two-step process, it is the Commissioner, not the reviewing court, who evaluates the credibility of all witnesses, including the claimant. *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). Importantly, "[c]redibility findings of an ALJ are entitled to great deference and . . . can be reversed only if they are 'patently unreasonable.'" *Pietrunti v. Director, Office of Workers' Comp. Programs,* 119 F.3d 1035, 1042 (2d Cir. 1997) (citation omitted).

There was substantial evidence to support the ALJ's credibility finding. The ALJ first considered the inconsistent statements Plaintiff made about why he stopped working as a truck driver in 2009. In a Disability Report completed by Plaintiff, Plaintiff indicated that he stopped working after being laid off due to lack of work. (R. 149). At the hearing, however, Plaintiff

12

testified that he was unable to perform works duties due to his back injury. (R. 12). The ALJ was entitled to rely on this inconsistency in making his credibility assessment. In fact, "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." *Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7P (S.S.A. July 2, 1996). [2]

The ALJ further explained that he found Plaintiff not to be entirely credible because his allegations of disabling pain were not consistent with the objective medical and opinion evidence of record. (R. 17-18). For example, the MRI of Plaintiff's lumbosacral spine taken on September 15, 2008 showed no signs of abnormality. (R. 202). In addition, Dr. Krompinger reported that Plaintiff likely would not need a great deal of medical intervention to treat his spinal impairment. (R. 211). With respect to Plaintiff's knee injury, in February, 2011, Plaintiff was pleased with his post-surgery progress and was doing well despite limited follow-up. (R. 271). All activity restrictions were removed at that time and Plaintiff was given a prescription for physical therapy to gradually resume full range of motion of his knee. (*Id.*).

While the ALJ is required to take into account the claimant's reports of pain and other limitations, the ALJ is not required to accept the claimant's subjective complaints without question. *Taylor v. Astrue*, No. 3:09cv1049, 2010 WL 7865031, at *9 (D. Conn. Aug. 31, 2010).

---

[2] The ALJ did err in stating that Plaintiff was not credible because he engaged in body building activities after his injuries occurred. (R. 17). This is inaccurate, as Plaintiff represented in his ADL that he could no longer exercise at the gym due to his injuries. (R. 175). Because the credibility determination overall is supported by substantial evidence, however, remand is not required for this one error. *See Jones v. Astrue*, No. 3:10cv476 CFD, 2011 WL 322821, at *8 (D. Conn. Jan. 28, 2011).

Instead, the ALJ must weigh the credibility of the claimant's complaints in light of the other evidence of record. The ALJ did that here.

Plaintiff additionally argues that it was error for the ALJ to discount his credibility based on periods of absence of treatment. The ALJ considered, in his credibility determination, that there were large gaps in Plaintiff's treatment history, particularly for his back injury. (R. 17-18). The medical evidence shows that Plaintiff was seeking treatment for his knee problems during the period of November 2009 through October 2010, but records of treatment for his back problems for this time period are absent. A claimant's attempts, or lack thereof, to seek treatment are a valid part of a credibility assessment. *See* SSR 96–7p at *7("A longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual statements."); *see also Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (viewing gaps in the medical record as "evidence" contradicting claimant's allegations of unrelenting pain); *Hunter v. Sullivan*, 993 F.2d 31, 36 (4th Cir. 1992) (finding that a claimant's failure to follow prescribed treatment contradicted his subjective complaints of pain); *Taylor v. Astrue*, No. 3:09cv1049, 2010 WL 7865031, at *11 (D. Conn. Aug. 31, 2010) (holding that a claimant's failure to adhere to prescribed treatment, as well as gaps in treatment, are relevant considerations in the assessment of credibility).

In all, the Court finds that substantial evidence supports the ALJ's credibility finding.

C. The RFC Finding

Finally, Plaintiff argues that the ALJ distorted the evidence of record such that the RFC finding is unsupported. The ALJ found that Plaintiff has the RFC to perform light work except

14

that he can occasionally bend, stoop, twist, squat, kneel, crawl, climb, and balance, and can never operate right foot controls. (R. 15). Substantial evidence supports this finding. Dr. Brown found that Plaintiff could work on a light duty basis. (R. 206). Dr. Krompinger directed that Plaintiff should seek a job that does not involve repetitive bending or lifting over thirty pounds. (R. 211). Dr. Acampora cleared Plaintiff to return to work following his back injury with the following limitations: no repetitive lifting over ten pounds; no bending more than five times per hour; no pushing or pulling over twenty pounds; and no squatting or kneeling. (R. 248). In addition, all activity restrictions were removed and Plaintiff was prescribed physical therapy so that he could gradually resume full range of motion in his knee. (R. 217). Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). The medical evidence supports the ALJ's RFC assessment that Plaintiff could perform light work with some limitations.

Plaintiff additionally argues that the record did not have adequate evidence to allow the ALJ to properly consider Plaintiff's knee impairment. This argument is unavailing, however, as the ALJ's decision includes a thorough discussion of Plaintiff's knee injury. The ALJ sets forth how Plaintiff first ruptured his patellar tendon in 1995 and continued to work until 2008. (R. 17). He discusses more recent treatment relating to the knee, including having the knee drained and having a cyst removed. (*Id.*). The ALJ further discusses Plaintiff undergoing a

15

reconstruction of the patellar tendon in 2010. (*Id.*). The medical evidence shows after the reconstruction surgery Plaintiff was doing well and was able to walk, and by February 11, 2011, all activity restrictions were removed. (R. 276, 271). Further, the RFC includes restrictions to accommodate both knee and back impairments. *See Larkin v. Astrue*, No. 3:12cv35(MPS), 2013 WL 4647229, at * 4 (D. Conn. Aug. 29, 2013). There is "no reason to believe that remand to the ALJ to consider knee […] pain in more detail would result in further restrictions." *Id.*

Next, Plaintiff contends that the ALJ erred in relying on the opinions of Drs. Brown and Acampora because their opinions pre-dated the onset date and thus were too remote to be relevant. The ALJ, while considering these opinions, also considered all opinion evidence, including more recent reports. And, there was nothing in the record to indicate that the opinions became irrelevant over time; in other words, the record contained no evidence that Plaintiff's condition worsened since the opinions. *Cf. Pierce v. Astrue*, No. 09-CV-813 GTS/VEB, 2010 WL 6184871, at *9 (N.D.N.Y. July 26, 2010) *report and recommendation adopted,* No. 5:09-CV-0813 GTS/VEB, 2011 WL 940342 (N.D.N.Y. Mar. 16, 2011) (finding a remote opinion could not be the basis for an RFC determination when "the record contain[ed] sufficient evidence to question whether that assessment was rendered stale by subsequent events.").

Plaintiff also appears to argue that the ALJ focused only on aspects of the record that support a finding of not-disabled. The Court does not agree with this characterization of the record. Cherry picking of relevant evidence "refers to crediting evidence that supports administrative findings while ignoring conflicting evidence from the same source." *Younes v. Colvin*, No. 1:14-CV-170 DNH/ESH, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015). Such a review of the evidence "can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *Id.* (citing *Genier v. Astrue,* 606

16

F.3d 46, 50 (2d Cir.2010)). Here, the ALJ's decision disaffirms Plaintiff's claims; the decision considers the evidence of record in full. It takes into account objective medical evidence and opinion evidence, and Plaintiff's testimony at the hearing. *See Lester v. Colvin*, No. 12-CV-0143 MAT, 2014 WL 3866429, at *7 (W.D.N.Y. Aug. 6, 2014)(finding that when the ALJ carefully considered the evidence of record, there was no basis to support an argument of cherry picking).

In sum, the Court finds substantial evidence supports the RFC finding.

## Conclusion

After a thorough review of the administrative record and consideration of all of the arguments raised by Plaintiff, the Court concludes that the ALJ did not commit any legal errors and that his decision is supported by substantial evidence. Accordingly, the Court recommends that Defendant's Motion to Affirm the Decision of the Commissioner [Doc. # 20] should be GRANTED and that Plaintiff's Motion to Reverse [Doc. # 18] should be DENIED.

This is a Recommended Ruling. *See* Fed. R. Civ. P. 72(b)(1). Any objection to this Recommended Ruling must be filed within 14 days after service. *See* Fed. R. Civ. P. 72(b)(2). In accordance with the Standing Order of Referral for Appeals of Social Security Administration Decisions dated September 30, 2011, the Clerk is directed to transfer this case to a District Judge for review of the Recommended Ruling and any objections thereto, and acceptance, rejection, or modification of the Recommended Ruling in whole or in part. *See* Fed. R. Civ. P. 72(b)(3) and D. Conn. Local Rule 72.1(C)(1) for Magistrate Judges.

SO ORDERED, this __29th__ day of June, 2015, at Bridgeport, Connecticut.

 */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge