## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM CHERRY,<br>      Plaintiff,<br><br>      v.<br><br>CAROLYN COLVIN, Acting<br>Commissioner of the Social Security<br>Administration,<br>      Defendant. | No. 3:13-cv-1440 (SRU) |

## RULING ON PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S RECOMMENDED RULING

Plaintiff William Cherry appealed from the adverse decision of the Commissioner of Social Security denying his applications for a period of disability insurance benefits and supplemental security income. On June 29, 2015, U.S. Magistrate Judge William I. Garfinkel issued a recommended ruling (the "Recommended Ruling") recommending that the decision of the Commissioner be affirmed (doc. # 26). Cherry filed an objection to the Recommended Ruling on July 13, 2015 (doc. # 27), and a memorandum in support of that objection with respect to particular portions of the Recommended Ruling on August 18, 2015 (doc. # 34). For the reasons set forth below, Cherry's objection is overruled. The Recommended Ruling is adopted and the decision of the Commissioner is affirmed.

## I.      Background

The court assumes the parties' familiarity with the underlying facts. A full statement of the relevant facts can be found in Magistrate Judge Garfinkel's Recommended Ruling. *See* Recommended Ruling, *Cherry v. Colvin*, 3:13-cv-1440 (doc. # 26).

II.     **Standard of Review**

"In the face of an objection to a Magistrate Judge's recommended ruling, the [d]istrict [c]ourt makes a *de novo* determination of those portions of the recommended ruling to which an objection is made." *Smith v. Barnhart*, 406 F. Supp. 2d 209, 212 (D. Conn. 2005); *see also Burden v. Astrue*, 588 F. Supp. 2d 269, 271 (D. Conn. 2008). The court may adopt, reject, or modify, in whole or in part, the Magistrate Judge's recommended ruling. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

A district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). It is not the court's function to determine *de novo* whether the claimant was disabled. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the court must review the record to determine first whether the correct legal standard was applied and then whether the record contains substantial evidence to support the decision of the Commissioner. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998).

When determining whether the Commissioner's decision is supported by substantial evidence, the court must consider the entire record, examining the evidence from both sides. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). Substantial evidence need not compel the Commissioner's decision; rather substantial evidence need only be evidence that "a reasonable mind might accept as adequate to support [the] conclusion" being challenged. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) (internal quotation marks and citations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the

2

ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks and citation omitted).

## III.   Discussion

Cherry raises three objections to Magistrate Judge Garfinkel's Recommended Ruling, arguing that the ruling errs by: (1) rejecting Cherry's argument that the administrative law judge ("ALJ") failed to sufficiently develop the record, which is made clear by new and material evidence that has arisen since the Recommended Ruling was issued; (2) rejecting Cherry's argument that the ALJ had no basis to find that Cherry has a residual functional capacity ("RFC") to do light work; and (3) rejecting Cherry's argument that the ALJ's credibility determinations were insufficiently supported. Those objections are considered in turn.

### A.   ALJ's Development of the Record and New Evidence

The ALJ has a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding," *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009), and that duty is heightened where, as here, the claimant appears *pro se* in proceedings before the Commisioner. *Id.* at 113. Cherry reasserts his argument, which Judge Garfinkel rejected, that the ALJ in his case failed to sufficiently perform that duty, and he purports to have new and material evidence that was not available when Judge Garfinkel considered the argument: the fact that he filed a second application for disability benefits and received a favorable outcome.

Cherry's argument that a subsequent grant of a disability claim is "new and material evidence"[1] in a proceeding challenging the denial of an earlier one relies primarily on the Ninth

---

[1] I note that the "materiality" standard governing consideration of new evidence under 20 C.F.R. § 416.1470(b) differs slightly from the "reasonable probability" standard of 20 C.F.R. §

Circuit's decision in *Luna v. Astrue*, 623 F.3d 1032 (9th Cir. 2010). That decision affirmed a district court's ruling that a finding of disability based on a second application for benefits warranted remanding for further factual consideration an earlier denial because the finding of disability "commenced at or near the time" of the contrary finding. *Id.* at 1034. The *Luna* Court favorably quoted the District Court in *Reichard v. Barnhart*, 285 F. Supp. 2d 728 (S.D.W. Va. 2003), which noted that "in certain circumstances, an award based on an onset date coming in immediate proximity to an earlier denial of benefits is worthy of further administrative scrutiny." *Id.* at 734. Neither *Luna* nor *Reichard* stands for the proposition that subsequent findings of disability *necessarily* cast doubt on earlier contrary findings, as Cherry seems to imply, but rather that they *might*, particularly when the contrary findings are close to each other in time.

There is also contrary authority. The Sixth Circuit's reasoning in *Allen v. Commissioner of Social Security*, 561 F.3d 646 (6th Cir. 2009), was perhaps not inconsistent with the *Luna-Reichard* principle, but it was at least cast in more skeptical language: "A subsequent favorable decision may be *supported by* evidence that is new and material . . . , but the decision is not itself new and material evidence." *Id.* at 653. That reasoning might allow that a favorable decision close on the heels of an unfavorable one could be probative of *something*, though the effect of the later decision on review of the earlier one would not depend solely on their temporal proximity but rather must turn on what evidence underlies the later decision. The Second Circuit has ventured still further from *Luna-Reichard*—albeit in a non-precedential summary order—and reasoned that "two ALJs may permissibly reach different conclusions, even on the same record"

---

405.401(c), which, as I discuss in *Orriols v. Colvin*, No. 3:14-cv-863(SRU), 2015 WL 5613153, at *2–*4 (D. Conn. Sept. 24, 2015), is the correct standard to apply to claims filed in Connecticut. Because the parties did not raise that issue and because it makes no difference in this case, I do not address the distinction further here.

and that such divergence "is not probative of anything." *Caron v. Colvin*, 600 F. App'x 43, 44 (2d Cir. 2015) (summary order).

There is therefore at least some doubt whether or how much to consider the second finding when reviewing the first, but one factor that weighs against Cherry's position is the interval between the two: not just days as in *Luna* and *Reichard*, but months in this case. The findings are contrary to each other, but they are not inconsistent. The ALJ in the case under review found that Cherry was not disabled from November 19, 2009, through February 22, 2012 (R. 20), and the ALJ in the subsequent case found that he was disabled as of June 14, 2012. Both findings can be true—physical conditions can deteriorate, whether or not any new injury is suffered—and they therefore require no reconciling. Cherry points to no evidence underlying the later finding that undermines the earlier one, and thus, even in light of the subsequent favorable ruling, I agree with Judge Garfinkel that Cherry has not shown that he was prejudiced by any failure of the ALJ to develop the record further.

B. ALJ's RFC Determination

Next, Cherry reasserts his argument that the ALJ had no basis in the record to make a finding that Cherry had the residual functional capacity ("RFC") to perform light work. He says that the Recommended Ruling fails to address that argument, but in fact Judge Garfinkel addressed and rejected it. The only alleged error that Cherry specifically identifies is failure to address what he calls "the sitting and standing requirements of light work" (doc. # 34 at 8).

Light work is defined by regulation (and quoted in the Recommended Ruling) as follows:

> Light work involves lifting no more than 20 pounds at a time with
> frequent lifting or carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very little, a job is in this
> category when it requires a good deal of walking or standing, or
> when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls. To be considered capable of

> performing a full or wide range of light work, you must have the
> ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). The Commissioner has issued a Social Security Ruling ("SSR") that

defines "frequent" lifting or carrying and further elaborates on the nature of light work as

follows:

> "Frequent" means occurring from one-third to two-thirds of the
> time. Since frequent lifting or carrying requires being on one's feet
> up to two-thirds of a workday, the full range of light work requires
> standing or walking, off and on, for a total of approximately 6
> hours of an 8-hour workday. Sitting may occur intermittently
> during the remaining time. The lifting requirement for the majority
> of light jobs can be accomplished with occasional, rather than
> frequent, stooping. Many unskilled light jobs are performed
> primarily in one location, with the ability to stand being more
> critical than the ability to walk. They require use of arms and
> hands to grasp and to hold and turn objects, and they generally do
> not require use of the fingers for fine activities to the extent
> required in much sedentary work.

SSR 83-10. Additionally, the previous paragraph of that SSR specifies several jobs in the light

work category that are primarily performed while seated but which require greater exertion than

sedentary work: mattress sewing machine operator, motor-grader operator, and road-roller

operator. *Id.*

Cherry is therefore correct that, according to the SSR, "the full range" of light work

includes intermittent standing or walking for up to six hours a day. It is not correct, however, that

all light work requires it, since "frequent" lifting or carrying also includes work that requires

being on one's feet for one-third of an eight-hour workday (or two and two-thirds hours,

cumulatively), and "light work" expressly includes some jobs that require greater exertion that

sedentary work but are primarily performed while seated. Moreover, the ALJ's RFC assessment

was not that Cherry could perform "the full range" of light work without limitations; and the

assessment of his ability and his limitations was made in light of and consistently with a range of

medical records (discussed with specificity by Judge Garfinkel, Recommend Ruling 15–16) with reference both to his back injury and his knee injury. I agree with Judge Garfinkel that substantial medical evidence supports the ALJ's RFC assessment that Plaintiff could perform light work with some limitations.

### C.   ALJ's Credibility Determinations

Finally, Cherry argues that the Recommended Ruling errs when reviewing the ALJ's finding that Cherry was not completely credible, because both the ALJ and the Recommended Ruling mistake two consistent statements as inconsistent and impermissibly hold gaps in treatment against him.

Cherry indicated in a Disability Report that he stopped working as a truck driver in 2009 when he was laid off due to lack of work (R. 149). At the hearing, he testified that he left that job because his back injury prevented him from performing works duties (R. 12). The ALJ and the Recommended Ruling take those two statements to be inconsistent, but Cherry argues that they are not: when he said "lack of work," what he really meant was lack of work that he could do with his limitations. He argues, in effect, that the two seemingly inconsistent statements were both true and seem inconsistent only because they contemplated different types of causation— the ultimate cause of his stopping work as a truck driver truly was his back injury, even if the proximate cause was a lack of work that he could do despite the injury. That way of parsing the statements is at best a strained interpretation, if not an implausible one, and it is also belied by context. Cherry completed his Disability Report on Form SSA-3368. Question 4.C asks "Why did you stop working?," and the standard form offers a choice between two options, the first of which is "Because of my condition(s)." Cherry did not check that box. Instead he selected "Because of other reasons," and in the space provided for elaboration, he indicated that the

7

"other reasons" were "laid of[f] due to lack of work" (R. 149). If his condition were the reason, directly or indirectly, that he stopped working, he could have simply checked the other box.

"Credibility findings of an ALJ are entitled to great deference and . . . can be reversed only if they are 'patently unreasonable.'" *Pietrunti v. Director, Office of Workers' Comp. Programs,* 119 F.3d 1035, 1042 (2d Cir. 1997). I cannot conclude that the ALJ's credibility determination was patently unreasonable on the basis of its consideration of the inconsistency between those two statements. On the contrary, "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record," SSR 96-7p, and the ALJ's and the Recommended Ruling's interpretation of the two statements as inconsistent is entirely reasonable—much more so than the interpretation Cherry suggests in its stead.

Cherry's argument that it was improper to consider gaps in his treatment as probative against his credibility is also unavailing. Certainly continuous or persistent efforts to receive treatment are consistent with and supportive of allegations of pain, *see* SSR 96-7p ("A longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual statements"), and the absence of efforts to receive treatment, while not dispositive, is similarly probative. Courts have held that claimants should not be denied benefits as a result of forgoing treatment they cannot afford, *see, e.g.*, *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995), but it does not follow that failure to seek or obtain treatment is never probative of credibility. The ALJ considered Cherry's "large gaps in treatment" for his back injury to "weigh against" the credibility of his allegations of functional

8

limitations (R. 18). The ALJ did not assign those gaps dispositive weight, or even too much weight in light of other evidence. Rather, combining those gaps with other consistent evidence, and without overlooking contrary evidence, the ALJ concluded that Cherry's limitations were "less severe than he alleged" (*id.*). That was not "patently unreasonable," and it therefore does not constitute a basis to reverse. *See Pietrunti*, 119 F.3d at 1042.

### IV.   Conclusion

For the foregoing reasons, the Recommended Ruling of January 28, 2015 is APPROVED and ADOPTED. The decision of the Commissioner is AFFIRMED. The Clerk shall enter judgment and close the file.

So ordered.

Dated at Bridgeport, Connecticut, this 14th day of January 2016.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge